UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

CHAD S. WILLIAMS,

          Petitioner,

v.

MONROE COUNTY JAIL
SUPERINTENDENT,

          Respondent.

**DECISION AND ORDER**

1:19-CV-00619 EAW

---

## I. INTRODUCTION

*Pro se* petitioner Chad S. Williams ("Petitioner") filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Dkt. 1). Petitioner challenges the outcome of a probable cause hearing held on January 8, 2019, with regard to a parole violation warrant. (*Id.* at 1).[1] For the reasons below, the request for a writ of habeas corpus is dismissed as moot.

## II. BACKGROUND

### A. State Court Proceedings

In 2017, Petitioner was convicted in the State of New York County Court, Monroe County (Argento, J.) on one count of failing to register or verify as a level three sex

---

[1] Page citations to all pleadings are to the pagination automatically generated by the Court's case management and electronic filing system (CM/ECF) and located in the header of each page.

offender in violation of New York Correction Law § 168-f(3). (SR: 1).[2] He was sentenced on July 7, 2017, to an indeterminate prison term of one and one-third to four years. (*Id.*). He was released to parole supervision on October 3, 2018. (SR: 12-31).

On December 28, 2018, the New York State Board of Parole ("Parole Board") issued a Violation of Release Report and Warrant #813925 charging Petitioner with violating eight conditions of his parole. (SR: 2-3 (Report); SR: 4-10 (Case Summary)). Petitioner was arrested later that day and detained at the Monroe County Jail ("the Jail"). (SR: 6).

On January 8, 2019, Preliminary Hearing Officer Anthony M. Robyler ("PHO Robyler") conducted a preliminary hearing at the Jail with regard to the alleged parole violations. For purposes of the hearing, Petitioner's parole officer, Kelly Chiello ("PO Chiello") proceeded on charge seven—that Petitioner had engaged in unauthorized contact with children on December 28, 2018. (*See* Transcript of January 8, 2019 Hearing ("1/08/19 Tr.") at 6).[3] Petitioner refused the assistance of Monroe County Assistant Public Defender Josh Stubbe and represented himself. (*Id.* at 2-4).

PO Chiello testified that after learning that Petitioner had been discharged from a residential treatment program, she and four of her colleagues went to a house on Affinity Lane in the City of Rochester and waited outside the home. (*Id.* at 7). PO Chiello had

---

[2] Citations to "SR:" refer to the Bates-stamped page numbers at the bottom of the state court records, filed at Docket 28-2.

[3] The transcripts of Petitioner's state court proceedings are filed at Docket 28-3. Citations to the transcripts are to the original pagination.

obtained that address based on data gleaned from Petitioner's GPS ankle monitor. (*Id.*). After 15 minutes, the front door opened, and Petitioner walked outside carrying a plate of chicken. (*Id.* at 8, 15). When she looked inside the house, PO Chiello observed two children who appeared to be between the ages of two and four years; they were Petitioner's grandchildren. (*Id.* at 7, 15).

Petitioner pleaded not guilty and testified at the hearing. (*Id.* at 7, 8-14, 15-16). He claimed that his daughter had told him there was no problem with him going to her house because her children were not there. (*Id.* at 9). When he got to his daughter's house, the children were not there. (*Id.*). As his grandchildren were coming in the back door with his daughter's half-sister, Jasa Williams, he was leaving the house. (*Id.*). He knew he was not supposed to be around children. (*Id.*). He never had contact with the grandchildren. (*Id.* at 10).

Petitioner requested permission to call his daughter, Jazz or Jazel Williams, and his friend, Avaden or Darnell Mohammed, who had driven him over to his daughter's house. (*Id.* at 9-11). PHO Robyler allowed Petitioner to call one witness; however, after a break, he noted that although the witnesses had arrived in time to testify, the Jail had not allowed them to enter. (*Id.* at 10-11). PHO Robyler offered to adjourn the proceedings for a week to allow Petitioner's witnesses to testify, but Petitioner demanded a one-hour recess to get his witnesses to come back and testify that day. (*Id.* at 11-12). PHO Robyler denied Petitioner's request, noting that preliminary hearings only were conducted once per week. (*Id.* at 11). Petitioner declined the one-week adjournment. (*Id.* at 12).

Instead, Petitioner submitted an unsworn statement from Jasa Williams and sworn statements from Jazz or Jazel Williams and Avaden or Darnell Mohammed, echoing his claim that his grandchildren were coming in the back door with Jasa Williams as he was going out the front door. (*Id.* at 12-13). These statements were marked as Defense Exhibit 1 and considered by PHO Robyler. (*Id.* at 13-14).

PHO Robyler found that the statements submitted by Petitioner did not outweigh PO Chiello's credible testimony. (*Id.* at 15). Based on PO Chiello's testimony, PHO Robyler determined there was probable cause to believe that Petitioner, "at some point" was "in that house with those children," which was against his parole conditions; and that there was probable cause to believe he committed the violation alleged in charge seven. (*Id.*). PHO Robyler scheduled the final revocation hearing for January 16, 2019. (*Id.*).

On February 20, 2019, Petitioner filed a *pro se* petition for a writ of habeas corpus in the State of New York County Court, Monroe County (Ciaccio, J.) ("state habeas court"), alleging that due process violations occurred at the preliminary hearing. (SR: 69-98).

After two adjournments on January 23, 2019, and March 27, 2019, the final parole revocation hearing was held on April 17, 2019, by Administrative Law Judge Thomas Kubiniec ("ALJ Kubiniec"). Petitioner represented himself. (4/17/19 Tr. at 2, 3). Parole Revocation Specialist Pamela Colaprete appeared on behalf of the Parole Board. (*Id.* at 2).

Petitioner was offered the opportunity to plead guilty to charge one, which alleged that he refused to submit to a drug test. (*Id.* at 3, 8). The sentence would be diversion into a 90-day treatment program offered by the New York State Department of Corrections and

Community Supervision ("DOCCS") at Willard and, if he completed the program successfully, he would be released. (*Id.* at 3). If he did not complete the 90-day program, he would have to serve whatever time was left on the 12-month jail sentence, which was the minimum hold that PHO Robyler could do under the guidelines. (*Id.*).

Petitioner elected to accept the Parole Board's offer and pleaded guilty to charge one. (*Id.* at 8, 14-21). Charges two through eight were withdrawn and dismissed. (*Id.* at 21). ALJ Kubiniec imposed the agreed-upon sentence. (*Id.*).

The state habeas court denied the habeas petition on April 23, 2019, because Petitioner had named the incorrect respondent and had failed to exhaust all available administrative remedies by appealing the parole revocation decision. (SR: 99-100).

ALJ Kubiniec issued written notice of his oral decision on April 29, 2019. (SR: 101-04). Petitioner filed a notice of appeal to the Parole Board's Appeals Unit. (SR: 105-09, 112-39). The Appeals Unit affirmed ALJ Kubiniec's decision on August 9, 2019. (SR: 140-42).

**B.   Federal Habeas Petition**

Petitioner filed his habeas petition on May 7, 2019, while he was detained at the Jail and his appeal of the parole revocation decision was still pending. (Dkt. 1 at 15). He asserts three grounds for relief based on alleged due process violations at the preliminary hearing conducted by PHO Robyler on January 8, 2019. (*Id.* at 5, 7-8, 10).

Respondent filed a response to the petition (Dkt. 28), the state court records (Dkt. 28-2), the state court transcripts (Dkt. 28-3), and a memorandum of law (Dkt. 27). Respondent argues that Petitioner's claims are unexhausted but must be deemed exhausted

and subject to an unexhausted procedural default (Dkt. 27 at 13-16), that they are foreclosed by his voluntary guilty plea (*id.* at 11-13), and that they are meritless (*id.* at 16-18). Petitioner filed two replies but did not address any of Respondent's procedural arguments. (Dkt. 32, 33).

It is not clear when Petitioner was transferred out of the Jail. On January 28, 2020, Petitioner was received into DOCCS' custody.[4] On March 12, 2020, after completing the remaining time on his 2017 conviction for failing to register as a sex offender, he was released from Orleans Correctional Facility to parole supervision.[5]

Since it appeared that Petitioner completed the sentence imposed as a result of the parole revocation proceedings challenged in the petition, a question arose as to whether the petition continued to present a live case or controversy allowing this Court to exercise subject matter jurisdiction over it. Accordingly, United States Magistrate Judge H. Kenneth Schroeder issued a text order on March 14, 2024, directing Petitioner to supply information demonstrating the existence of a concrete and ongoing actual injury—other than his now-ended incarceration—that could be remedied by the grant of a writ of habeas corpus. (Dkt. 34). Petitioner was afforded 30 days to respond to the text order. (*Id.*).[6] The

---

[4] *See* https://nysdoccslookup.doccs.ny.gov/ (search for DIN 17B2086) (last accessed April 17, 2024).

[5] *See* n.4, *supra*.

[6] Petitioner did not update the Court with his address following his release from incarceration, as required by this District's Local Rule of Civil Procedure 5.2(d). Accordingly, the text order was sent to original address of record, Orleans Correctional Facility, but was returned as undeliverable. (Dkt. 35).

text order was returned as undeliverable on March 21, 2024. (Dkt. 35). The 30-day deadline has now elapsed without any response from Petitioner as to why the petition should not be dismissed as moot.

### III. JURISDICTION

Article III, § 2 of the United States Constitution limits this Court's subject matter jurisdiction to matters presenting an actual case or controversy. *See Blackwelder v. Safnauer*, 866 F.2d 548, 550 (2d Cir. 1989) ("Mootness is a jurisdictional matter relating to the Article III requirement that federal courts hear only 'cases' or 'controversies.'") (quoting *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975)). If the issues presented by the case "are no longer 'live' or the parties 'lack a legally cognizable interest in the outcome,'" the case is moot, thereby depriving the court of jurisdiction to hear it. *Id.* (quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1982)).

The "case-or-controversy requirement subsists through all stages of federal judicial proceedings, trial and appellate." *Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (quoting *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990)). "The parties must continue to have a personal stake in the outcome of the lawsuit." *Id.* (quoting *Lewis*, 494 U.S. at 478). "This means that, throughout the litigation, the [petitioner] 'must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision.'" *Id.* (quoting *Lewis*, 494 U.S. at 477).

In habeas proceedings, "mootness is not fixed at the time of filing but must be considered at every stage" of the proceeding. *Nowakowski v. New York*, 835 F.3d 210, 217 (2d Cir. 2016). If the petitioner has been released from custody during the pendency of the

case, the petition is deemed moot unless he can show a "concrete and continuing injury other than the now-ended incarceration," such as an ongoing "collateral consequence" of his prior detention or conviction. *Spencer*, 523 U.S. at 7.

When the petitioner is challenging a criminal conviction, the Court may presume the existence of collateral consequences. *See Sibron v. New York*, 392 U.S. 40, 55 (1968) (acknowledging, in the context of a direct appeal, the "obvious fact of life that most criminal convictions do in fact entail adverse collateral legal consequences," ranging from deportation to sentencing enhancements in the event of future convictions).

No similar presumption exists where the petitioner "does not challenge a criminal conviction." *Nowakowski*, 835 F.3d at 218. In *Spencer*, the Supreme Court specifically held that a petitioner seeking relief from a parole revocation is not entitled to the *Sibron* presumption of collateral consequences. *See* 523 U.S. at 9-13 (declining to extend the presumption of continuing collateral consequences to parole violations). Instead, the petitioner must demonstrate a concrete, ongoing injury-in-fact attributable to the parole revocation. *Id.* at 14.

The petitioner in *Spencer* offered four purported injuries-in-fact attributable to his parole revocation—that it could be used to his detriment in a future parole proceeding, to increase his sentence in a future sentencing proceeding, to impeach him should he appear as a witness or litigant in a future criminal or civil proceeding, or to comprise direct evidence of guilt should he appear as a defendant in a criminal proceeding. *See id.* at 14-16. The Supreme Court rejected all of the proffered circumstances as too speculative to

constitute injuries-in-fact, noting that they largely were contingent upon the petitioner violating the law and getting caught. *See id.* at 15-16.

Here, Petitioner does not challenge his 2017 criminal conviction for failing to register as a sex offender. Nor does he challenge ALJ Kubiniec's parole revocation order. Instead, Petitioner challenges only the preliminary hearing conducted by PHO Robyler on the parole violation warrant. However, Petitioner is no longer detained pursuant to the parole violation warrant, the preliminary hearing or, for that matter, the parole revocation decision. Despite being given an opportunity to do so, Petitioner has not shown a concrete, ongoing collateral consequence flowing from any of the parole-related proceedings outlined above. The petition therefore does not present a justiciable case or controversy, and the Court may not exercise subject matter jurisdiction over it. Accordingly, the petition is dismissed without prejudice.

### IV.   CONCLUSION

For the reasons above, the petition (Dkt. 1) no longer presents a live case or controversy and is moot. Because the Court lacks subject matter jurisdiction over the petition, it is dismissed without prejudice. The Court declines to issue a certificate of appealability under 28 U.S.C. § 2253(c)(1) because Petitioner has failed to make "a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). The Clerk of Court is directed to close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:   April 19, 2024
         Rochester, New York